# Johnson v. Rogers.

*Bill in Equity for an Injunction and to rescind a Contract of Purchase of Land.*

1. *Contract of sale; right of rescission when made by reason of fraudulent misrepresentation.*—When a purchaser is induced to enter into a contract of sale of land by the vendor's false representations of material facts, which were not patent or open to his inspection, and upon which he had the right to rely, and did rely, and without the existence of which the contract would not have been made, he can claim a rescission of such contract, and can maintain a bill in equity to have the rescission declared.

2. *Same; same; sufficiency of evidence and burden of proof.*—Where a purchaser of land seeks to rescind a contract of sale on the ground of fraudulent misrepresentations, the right to the rescission or cancellation must be established by clear and convincing proof; and the representations themselves, and that they were false and fraudulently made, must be clearly shown, since a court of equity will not grant such relief upon a bare probability, nor even upon a mere preponderance of the evidence.

[Johnson v. Rogers.]

APPEAL from the Chancery Court of Etowah.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on January 19, 1894, by the appellants, E. C. Johnson and her husband, against the appellees, Dollie Rogers and her husband, Joseph Rogers. The purpose of the bill and the facts of the case are sufficiently stated in the opinion.

Upon the submission of the cause on the pleadings and proof, the chancellor rendered a decree declaring that the complainants were not entitled to the relief prayed for, and ordered that the temporary injunction previously issued be dissolved, and that the bill be dismissed. From this decree the complainants appeal, and assign the rendition thereof as error.

DENSON & BURNETT, for appellants.—If the land conveyed is materially less or quality over-valued than that pointed out, this arms the purchaser with the right to rescind the contract or abate the purchase price, dependent on the option of the purchaser, and the facts of the particular case. This defense is equally available whether the seller knows or does not know the representations to be false. The injury to the purchaser is the same whether the misrepresentations were made through ignorance or intention.—*Joseph v. Seward*, 91 Ala. 598; *Thweatt v. McLeod*, 56 Ala. 375.

Misrepresentations of even matters of opinion will authorize a rescission where it was not equally open to both, or where one party is presumed to trust the other. *Juzan v. Toulmin*, 9 Ala. 684. Though Rogers was the agent or his wife, yet if he made a material misrepresentation she is bound by it, though made without her authority.—*Bennett v. Judson*, 21 N. Y. 238; Bigelow on Fraud, 362-367. This is true, even if the agent did not know it was false.—*McKinnon v. Vollmer*, 6 L. R. A. 124. The same rule applies to realty as to personalty. *Griel v. Lomax*, 94 Ala. 641; *Henry v. Allen*, 93 Ala. 197; *Woodbury v. State*, 69 Ala. 242; 3 Wait's Act. & Def., 436.

DORTCH & MARTIN, contra.—The alleged misrepresentations in this case were not sufficient to authorize a rescission of the contract.—*Lockwood v. Fitts*, 90 Ala. 153. Johnson was on the land and had every opportu-

nity to judge for himself and did so as he stated to Acker.—*N. O. & Ala. Coal & Min. Co. v. Musgrove*, 90 Ala. 428.

COLEMAN, J.—In November, 1894, the complainants by deed conveyed a house and lot situated in the city of Gadsden, the property of E. C. Johnson, to Dollie Rogers, and also executed to her a promissory note for five hundred dollars. The consideration for the house and lot and the promissory note was a deed to one hundred acres of land executed by Dollie Rogers and her husband, Joseph Rogers, to E. C. Johnson; the transaction being an exchange of the land by the Rogers for the house and lot, Mrs. Johnson agreeing to pay five hundred dollars as the difference in value. The Johnsons refusing to deliver possession of the house and lot, Mrs. Rogers instituted ejectment to recover possession. Thereupon the complainants filed the present bill, the purpose of which is to enjoin the ejectment suit, and to procure a rescission of the contract, and cancellation of the deeds and note. The bill avers fraud and misrepresentation by Joseph Rogers, who acted in the transaction as agent for Dollie Rogers, as to the quality and quantity of the land, and the timber growing upon it.

The principles of law and the degree of proof, which authorize the granting of the relief prayed for in the bill, have been frequently stated by this court. In the case of *Thweatt v. McLeod*, 56 Ala. 375, it was said: "A misrepresentation of a material fact, on which another has the right to rely, whether made willfuly or intentionally, or from mistake, inadvertence or ignorance, will operate to avoid a contract founded on it."

In *New Orleans & Ala. Coal & Mining Co. v. Musgrove*, 90 Ala. 428, it was said: "No principle is better settled, or more uniformly recognized, than that a court of equity will interfere to rescind a contract of sale of land, into which the purchaser has been induced to enter by the vendor's false representations of material facts, not patent or open to his inspection, upon which he had a right to rely, and did rely, whereby he was injured, and without the existence of which the contract would not have been made. But the rescission of a contract is not a matter of discretion; the court must be governed by established rules and precedents. Essential elements of

[Johnson v. Rogers.]

a misrepresentation, to be rendered available to rescind a contract, are, that the party to whom it is made must be justified in relying, and must rely, upon the representation, and it must be an immediate cause of his entering into the contract. If he did not rely upon it, or was misled by it, or if it was a fact equally open to the inquiries of both parties, and nothing done to prevent or obstruct or lull inquiry, the court will not interfere to grant relief.—*Crown v. Carriger,* 66 Ala. 590."

In *Joseph v. Seward,* 91 Ala. 597, 599, it was said: "By an unbroken line of decisions in this State, if in negotiating a sale of land, the seller represents or points out an improper boundary of the land, he is selling, and thereby induces the purchaser to close the trade ; and if the representation is untrue and the land conveyed, or agreed to be conveyed, is materially less in quantity or value than that pointed out, this arms the purchaser with the right to rescind the contract. * * * And this defense is equally available to the purchaser, whether the seller knows or does not know the representation he makes is false."

No question of *laches* or ratification arises in the present case to avoid the application of the foregoing principles. All the authorities agree that the misrepresentations which will avoid a contract must be of "material," "substantial" facts, and not relate to mere matters of opinion or future intentions.—*Meeks v. Garner,* 93 Ala. 17 ; *Birmingham Warehouse & Elevator Co. v. Elyton Land Co., Ib.* 549, and authorities cited ; *Joseph v. Decatur Land, &c., Co.* 102 Ala. 346. As to the degree of proof, in the case of *Bailey v. Litten,* 52 Ala. 282, it was said : "Whoever in a court of eqiuty bases a right to the recission or cancellation of a contract on allegations of [fraud] must distinctly allege and clearly prove the fraud." In *Howle v. North Birmingham Land Co.,* 95 Ala. 389, it was said : "The right to rescission or cancellation of a contract because of fraudulent misrepresentation, must be established by clear and convincing proof. A court of equity cannot grant such relief upon a probability, nor even upon a mere preponderance of the evidence. The representations themselves, and that they were false and fraudulently made, must be clearly established."

With these principles in view, the question for this

court is simply one of fact. Dollie Rogers, the wife of
Joseph Rogers, seems to have been represented through-
out the transaction by her husband. The only witnesses
who were present at the making of the contract are
Joseph Rogers on the one side, and Johnson and his
wife on the other. Mrs. Johnson, the vendor of the
house and lot, never saw the land purchased before or
since its purchase. Her husband, in company with
Joseph Rogers, rode over and examined the land, before
the consummation of the exchange. Joseph Rogers and
J. J. Johnson, the husbands, contradict each other di-
rectly on most of the material questions as regards the
lands. First then as to the quantity of the land. The
deed describes it as follows : "One hundred acres of
land on the lower corner of said Dollie A. Rogers' farm,
beginning at the Coosa river at the mouth of a certain
branch, thence running with said branch to F. M.
Reeves' corner at the south end of his place next to the
river, thence with said Reeves' line across the public
road running from Tidmore's Bend to White Chapel,
thence straight across to Fitts' line, thence with said
Alfred Fitts' line to Coosa river, thence with the river to
the beginning point, said branch, said parcel of land to
contain one hundred acres of land precisely, no more and
no less, in Etowah county, Alabama." There is no con-
troversy between the parties as to three sides of the land.
The difficulty as to the quantity of the land arises from
the following part of the description, to-wit, "Thence
with said Reeves' line across the public road, running
from Tidmore's Bend to White Chapel, thence straight
across to Fitts' line." There can be no doubt that the
public road designated, is the one that lies between Tid-
more's bend and White Chapel. Johnson swears that
Rogers stated to him, that the "straight line to Fitts'
line was to begin just across the public road, and that
when the line is thus run, there are only eighty-four and
a half acres within the boundaries, instead of one hun-
dred acres." On the other hand, Rogers swears, that
the agreement was that the line was to extend along
Reeves' line, across the public road, far enough, and to a
point from which going straight across to Fitts' line,
would include one hundred acres. That Rogers is cor-
rect in this statement, hardly admits of controversy.
The deed particularly states that "one hundred acres in

[Johnson v. Rogers.]

the lower corner of the Dollie Rogers farm'' is thereby conveyed, "precisely one hundred acres, no more, no less.'' It then gives the boundaries. Three of the sides are specifically stated. The fourth side then begins "at Reeves' corner at the south end of his place next to the river, thence with said Reeves' line across the public road, thence straight across to Fitts' line.'' The surveyor testifies that by going five hundred and eleven feet from the public road further along Reeves' line, the boundary would include exactly one hundred acres, "no more, no less.'' There is nothing in this point.

A great many witnesses were examined as to the relative value of the land, and the consideration paid for it. Unless the misrepresentation is clearly established, we do not see the material bearing of this evidence. It is not the province of a court of equity, to even up the consideration of contracts, and see that equality is meted out in the various transactions of life, or to supply judgment and skill where it is wanting. It will not permit fraud and undue misrepresentation, but where parties rely upon their own judgment, or are not unduly imposed upon by others, it will leave them where they place themselves.

The evidence in this case falls far short of "clearly convincing'' the judicial mind, that the complainants were induced to enter into the agreement which they seek to rescind, by the false or fraudulent representations of Joseph Rogers. The complainants may have made a bad bargain, but it is not unconscionable. We incline to the view from the evidence that the dissatisfaction has resulted more from the interference of "busy bodies,'' than from actual disadvantage sustained at the time of the trade, or from the misrepresentation of Rogers. Although only six or seven miles from where Mrs. Johnson lives, she has never gone to examine the place, relying wholly upon the statements of others as to its condition and quality.

Our conclusion from the evidence accords with that of the chancellor and the decree of the court must be affirmed.

The counter abstract is defective in not specifying the pages of the transcript referred to, and its cost will not be included in cost of appeal.

Affirmed.